**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURIGUARD, INC., <br><br>         Plaintiff/Counter-Defendant, <br><br>   v. <br><br> UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL 276, on behalf of KWABENA SAWYER <br><br>         Defendant/Counterclaimant. | Civil Action No. 20-156 (JMC) |

**<u>MEMORANDUM OPINION</u>**

United Government Security Officers of America, Local 276 (UGSOA) filed a grievance on behalf of Kwabena Sawyer, challenging Sawyer's termination from employment with Securiguard, Inc.[1] An arbitrator ordered that Sawyer's termination be expunged and that Sawyer be reinstated with backpay. Securiguard filed a complaint to vacate the arbitral award. ECF 1. UGSOA filed a counterclaim to confirm it. ECF 6. The case is before the Court on the Parties' cross-motions for summary judgment. ECF 14, 19. The Court grants judgment for UGSOA.

**I.      BACKGROUND**

Neither Party challenges the factual findings of the arbitrator, and the case does not turn on those findings. Accordingly, the Court accepts the arbitrator's factual findings as true for purposes of this opinion. Securiguard employed Kwabena Sawyer as part of its contract with the federal

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

government to provide security services at the Thurgood Marshall Federal Judiciary Building. ECF 14-10 at 3. On June 1, 2018, Sawyer was staffed as the "Post 3 Officer," responsible for ensuring that no unauthorized automobiles or pedestrians entered the parking facility under the building. *Id.* at 3–4. Late that afternoon, an unauthorized person walked past Post 3 and entered the parking garage, *id.* at 4, where the Parties agree he was apprehended by other security officers. ECF 14-1 ¶ 37; 19-2 ¶ 21. Five days later, Securiguard terminated Sawyer for "[n]eglect of duty," "[b]reach of security," and "[b]eing inattentive while on duty." ECF 14-10 at 9.

The terms of Sawyer's employment were governed by a collective bargaining agreement (CBA) between Securiguard and Sawyer's union, UGSOA. ECF 14-1 ¶ 6; 19-2 ¶¶ 2–3. The material provisions of the CBA are as follows:

> Section 17.01 No employee who has completed the probationary period[2] shall be suspended or discharged without just cause . . . .

> Section 17.04 Subject to the foregoing, the following offenses, shall subject an employee to immediate discharge:

>> B. Level Two (2) Offense(s):
>>> . . .
>>> b. Neglect of duty or failure to perform duties . . . .
>>> c. Breach of security.
>>> . . .
>>> m. Sleeping or being inattentive while on duty.

> Section 17.05 This Article shall be strictly construed without consideration of any special circumstances or excuses of an affected employee . . . .

ECF 14-4 at 8, 10–12.

---

[2] Under the CBA, "[a]n employee shall be regarded as a probationary employee for the first ninety (90) calendar days of his employment." ECF 6-1 at 14, § 7.02. Here, neither Party disputes that Sawyer, who had worked at Securiguard for ten years, ECF 14-10 at 3, was well beyond the probationary period.

UGSOA filed a grievance under the CBA seeking to expunge Sawyer's termination. ECF 14-10 at 12. That grievance went to arbitration. *Id.* At arbitration, Securiguard focused on Section 17.04, which, it argued, limited "the scope of the issue of just cause to a consideration of whether [Sawyer] committed a Level Two offense and preclude[d] consideration of other factors." ECF 14-10 at 15. In Securiguard's view, "once a Level Two offense [was] proven," the arbitrator was bound by the plain language of the CBA to uphold the termination. *Id.*

The arbitrator concluded otherwise. Although he agreed with Securiguard that Sawyer had committed Level Two offenses, he determined that the just cause inquiry did not end there. Rather, the arbitrator looked to section 17.01 of the CBA, which, in his opinion, made it "appropriate to conduct a just cause analysis in this case." ECF 14-10 at 25. The arbitrator went on to perform a seven-factor just cause analysis, based on a well-known test pioneered by a different arbitrator in an unrelated case.[3] *Id.* at 25–27. After performing that test, the arbitrator concluded that just cause was lacking in Sawyer's case for three reasons: (1) Securiguard had not considered the mitigating circumstances of Sawyer's breach, namely that he had not been issued a radio that day or informed that the security officer stationed near his post had departed as part of the periodic rotation of personnel; (2) Securiguard had, on three previous occasions, responded to similar security breaches by other employees by either not pursuing discipline at all, or imposing a far lighter penalty; and (3) Sawyer had, up until the offense in question, maintained a clean disciplinary record for ten years of employment. *Id.* at 26–27. The arbitrator ruled that Sawyer's termination should be expunged, and that Sawyer should be reinstated with a ten-day suspension. *Id.* at 29. He

---

[3] Specifically, the arbitrator cited to the "seven tests of just cause" as set forth by noted arbitrator Carroll R. Daugherty in the appendix to his decision in *Enterprise Wire Co.*, 46 LA 359 (Daugherty, 1966). As Daugherty explained in that decision: "Few if any union-management agreements contain a definition of 'just cause.' Nevertheless, over the years the opinions of arbitrators in innumerable discipline cases have developed a sort of 'common law' definition thereof. This definition consists of a set of guide lines or criteria that are to be applied to the facts of any one case . . . ."

also awarded Sawyer the backpay and benefits that would have accrued had he been employed during the period between his termination and the date of the award. *Id.*

Securiguard filed this action under § 301(a) of the Labor Management Relations Act, seeking vacatur of the award on the grounds that the arbitrator had "wholly disregarded the plain language of the CBA" and "unlawfully dispensed his own brand of industrial justice." ECF 1 at 8. UGSOA filed a counterclaim seeking confirmation of the award. ECF 6. The case is before the Court on the Parties' cross-motions for summary judgment. ECF 14, 19.

## II.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

In labor arbitration cases, the Court takes as a premise that the parties have "bargained for the arbitrator's construction of their agreement." *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000). Accordingly, the Court reviews a labor arbitration award under an "extraordinarily deferential standard." *Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union (Mail Handlers)*, 589 F.3d 437, 441 (D.C. Cir. 2009). Under that standard, an arbitrator's decision must be confirmed so long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597

4

(1960). In practice, that means the Court must uphold an award so long as the arbitrator is "*even arguably* construing or applying the contract and acting within the scope of his authority." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (emphasis added). That standard applies "even if the court is convinced the arbitrator committed serious error." *Mail Handlers*, 589 F.3d at 441. In other words, the question the Court must decide when reviewing a labor arbitration award "is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013).

That is not to say that the Court acts merely as a rubber-stamp when it comes to labor arbitration. A court is required to reverse an arbitrator's decision "[w]hen the arbitrator's words manifest an infidelity to [their] obligation" to interpret and apply the agreement at issue. *United Steelworkers*, 363 U.S. at 597. An arbitrator may not "stray[]" from his assigned task and "dispense[] his own brand of industrial justice." *Mail Handlers*, 589 F.3d at 441. Nor may an arbitrator "contravene[] the express terms" of a CBA to deny one party the benefit of its bargain. *Nat'l Children's Ctr. v. Serv. Emps. Int'l Union, Local 500*, 68 F. Supp. 3d 96, 102 (D.D.C. 2014) (reversing an award where the arbitrator overruled management's definition of gross misconduct, despite a clause that reserved management's right to define the term).

A court will also reverse an arbitrator's decision "if the award itself violates established law or seeks to compel some unlawful action." *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 789 F.2d 1, 8 (D.C. Cir. 1986). This rule, which is often referred to as the "public policy exception," is "extremely narrow." *Id.* To successfully invoke the public policy exception, a party must demonstrate both that (a) the award itself, as opposed to the underlying conduct, violates public policy, and (b) that the public policy is "explicit, well-defined, and dominant . . . [as]

ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *E. Associated Coal Corp.*, 531 U.S. at 62.

## III.   ANALYSIS

The Court confirms the arbitral award expunging Sawyer's termination. First, the Court finds that the arbitrator was construing and applying the CBA when he determined that section 17.01 of the CBA required him to look beyond section 17.04 to consider other indicia of just cause. The Court also finds that the arbitrator's award does not violate any well-defined public policy.

### A.   The arbitrator's decision draws its essence from the collective bargaining agreement.

Securiguard does not dispute that the arbitrator's task in this case was to determine whether Sawyer was terminated for just cause.[4] ECF 21 at 8–9. Instead, Securiguard argues that sections 17.04 and 17.05 of the CBA are clear that, once an employee is determined to have committed a Level Two offense, just cause has been satisfied. *Id.* In Securiguard's view, when the arbitrator looked beyond the plain text of section 17.04 (that a Level Two offense "shall subject an employee to immediate discharge") and expunged Sawyer's termination based on other indicia of just cause, he contravened the express terms of the CBA to "dispense his own brand of industrial justice." *United Steelworkers*, 363 U.S. at 597. In support of that position, Securiguard relies heavily on *National Children's Center v. Service Employees International Union*, 68 F. Supp. 3d 96 (D.D.C. 2014). In that case, an arbitrator determined that an employee who removed another employee's property from the workplace without permission had not committed gross misconduct, despite management's promulgation of a rule (per its authority under the CBA) saying that it was.

---

[4] As UGSOA points out, Securiguard's concession on that point aligns with the record. When the Parties submitted the grievance to the arbitrator, they stipulated that the issue to be decided was, in part, whether Securiguard had "just cause for the termination of Kwabena Sawyer." ECF 19-2 ¶ 16. Then, at the arbitration hearing itself, Securiguard's counsel confirmed that "[w]e agree with that statement of the issues." *Id.*

*Id.* at 100, 102–03. The court vacated the award, finding that the arbitrator had "contravened the express terms of the [CBA]" and deprived the employer of the benefit of its bargain. *Id.* at 102. Securiguard argues that case requires vacatur here as well. ECF 14-11 at 19–20.

The Court disagrees. In this case, the arbitrator's reliance on the just cause standard is firmly grounded in language of the CBA—specifically, in section 17.01, which states that "[n]o employee who has completed the probationary period shall be suspended or discharged without just cause." ECF 14-4 at 8; ECF 14-10 at 25. The arbitrator's reliance on section 17.01 is further supported by the first clause of section 17.04, which states that the terms of that provision are to be applied "[s]ubject to the foregoing." ECF 14-4 at 10. That clause, at least arguably, makes section 17.04 subsidiary to section 17.01. *See Garvey*, 532 U.S. at 509. It is not for the Court to determine whether it agrees with the arbitrator's conclusion that sections 17.01 and 17.04 are best read to import a generalized just cause inquiry into a grievance based on a Level Two offense. It is enough to conclude, as the Court does here, that the arbitrator was, in fact, interpreting the agreement.

As for the analogy to *National Children's Center*, Securiguard's argument neglects a key difference between that case and this one. In *National Children's Center*, the court did not object to the arbitrator considering whether the termination was for just cause (as the term was defined by the CBA); indeed, the court remanded the case for the arbitrator to do exactly that. 68 F. Supp. 3d at 104. The court objected only to the arbitrator's determination that the employee's actions did not rise to the level of gross misconduct, despite management's definition of the term, which it had promulgated according to its rights under the CBA. *Id.* In this case, that would be the equivalent of the arbitrator ignoring the CBA's enumerated list of Level Two offenses to conclude that Sawyer's actions were not, in fact, a Level Two offense. But the arbitrator in this case did

nothing of the kind. *See* ECF 14-10 at 25. There is nothing in *National Children's Center* to suggest that the arbitrator, having concluded that Sawyer committed one or more Level Two offenses, could not interpret the CBA to require a more comprehensive just cause analysis, even if he looked outside the four corners of the agreement to provide the framework for that analysis. *See Mail Handlers*, 589 F.3d at 443 ("[A] labor arbitrator is not confined to the express provisions of the contract, but may also look to other sources—including the industrial common law—for help in construing the agreement.").

Securiguard makes one other, more pointed argument that the arbitrator's award was incompatible with the CBA. Specifically, Securiguard contends that the seven-part just cause inquiry utilized by the arbitrator is at odds with section 17.05, which requires that "[t]his Article shall be strictly construed without consideration of any special circumstances or excuses of an affected employee," and that "no exceptions shall be made from the provisions described in this Article." ECF 14-4 at 12. According to Securiguard, the arbitrator's consideration of mitigating circumstances—especially the proposition that the intruder was able to enter the parking garage only because of a poorly communicated shift-change—violated section 17.05's bar on the consideration of any special circumstances or excuses. ECF 14-11 at 21. UGSOA counters that (1) section 17.05 requires that Article 17 be strictly construed *in its entirety*, including section 17.01, and therefore the "special circumstances or excuses" language should be read to apply only to those that are outside the just cause inquiry, ECF 23 at 8–9; and (2) that, in any event, section 17.05 cannot be reasonably read to bar consideration of disparate treatment, on which the arbitrator heavily relied. *Id.* at 4–6. The Court finds both of those arguments plausible. However, even assuming the Court believed the arbitrator's construction of the CBA was clearly erroneous, vacatur would be justified only if it were clear to the Court that the arbitrator was not construing

the CBA at all, but rather substituting his own judgment for that of the Parties in negotiating the CBA. That is simply not the case here, where the arbitrator repeatedly referred to the CBA's terms, and tethered his analysis to a plausible interpretation of those terms. Thus, the Court concludes that the arbitrator did not exceed his authority to interpret the CBA.

**B. The arbitration award does not violate any well-defined public policy.**

Securiguard also argues that, even if the arbitrator in this case did not overstep his authority to interpret and apply the CBA, the Court should still vacate the arbitral award on the grounds that Sawyer's reinstatement violates the "defined public policy interest in maintaining the security of sensitive installations such as judicial complexes." ECF 14-11 at 24. In support of its contention that judicial security represents a well-defined public policy, Securiguard cites to the following: two Ninth Circuit precedents stating that courthouse security is a legitimate state interest, *id.* at 24–25; the terms of Securiguard's contract with the federal government, *id.* at 25–26; the legislative history of the Court Security Improvement Act of 2007, ECF 21 at 13–14; and a GAO audit conducted in 2014, *id.* at 14–15. Securiguard also suggests that, should the arbitrator's decision be allowed to stand, that "would encourage a culture of lax discipline that could very well lead to more breaches." ECF 14-11 at 25. Notably absent from the authorities Securiguard cites is any positive law relating to security personnel at judicial facilities. None of those authorities comes close to establishing that the reinstatement of a security officer who, once in nearly ten years, let a single unauthorized individual walk past his post violates an "explicit, well-defined, and dominant" public policy. *E. Associated Coal Corp.*, 531 U.S. at 62.[5]

---

[5] In its Reply, Securiguard also cites to three decades-old, non-binding precedents, which it contends show that "a recognized danger to the public can give rise to a public policy requiring the overturning of an arbitral award that would have the effect of endangering public safety." ECF 21 at 15. But in all three of those cases, the court turned to a federal statute or regulatory scheme to identify the violated public policy. *See Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360–61 (3d Cir. 1993) (Coast guard regulations seeking to prevent operation of Coast Guard vessels while under the influence of drugs); *Iowa Elec. Light & Power Co. v. Loc. Union 204 of Int'l Bhd. of Elec.*

The narrowness of the public policy exception is meant to "limit potentially intrusive judicial review of arbitration awards under the guise of public policy." *Am. Postal Workers*, 789 F.2d 1 at 8. The Court agrees, to be sure, that the security of judicial facilities is important. Nevertheless, the public policy exception does not permit the Court to vacate an arbitral award based only on its own intuitions about policy. Accordingly, the Court finds that the public policy exception does not apply and confirms the award.

## IV.    CONCLUSION

There are no material facts in dispute and both motions for summary judgment turn entirely on the legal questions discussed above. Accordingly, Securiguard's Motion for Summary Judgment in support of its complaint to vacate the arbitral award is **DENIED**. UGSOA's Motion for Summary Judgment in support of its crossclaim to confirm the award is **GRANTED**.

A separate order accompanies this opinion.

**SO ORDERED.**

DATE: October 31, 2022

_____
Jia M. Cobb
U.S. District Court Judge

---

*Workers*, 834 F.2d 1424, 1428 (8th Cir. 1987) (nuclear plant safety rules "put in place pursuant to a strict regulatory scheme devised by Congress"); *Amalgamated Meat Cutters, Local Union 540 v. Great W. Food Co*., 712 F.2d 122, 125 (5th Cir. 1983) (Federal Motor Carrier Safety Regulations). Securiguard points to no analogous authority here.